The next case today is 22-1910, Kristen Dicroce v. McNeil Nutritionals, LLC, et al. Attorney Zavas, please introduce yourself for the record. May it please the Court, and good morning. My name is Attorney John Zavas. I represent the Plaintiff Appellant, Kristen Dicroce, and I'm accompanied here by Attorney Noah Rosmer. I'm told I have ten minutes, and I'd like to reserve three for rebuttal. Yes, you may. Thank you. Your Honor, this is on earth. This is a very simple case, and it comes down to a question of whether or not lactose intolerance is a disease. Now, we believe that we have the better of that argument, clearly the better of that argument, because number one, it's categorized as a disease by the National Institute of Health. Number two, it fits within the FDA's own regulations defining what constitutes a disease. Number three, it's clearly a more serious health concern than many diseases that are considered diseases by the FDA. And the examples that we've given in the Court in our briefing is chapped lips and heartburn. Let me ask you this question so I understand where you're coming from. If we were to find that the label that's at issue here does not violate any FDA regulations, would you have a claim? It would be impossible to find that the label does not violate the FDA. Sure, but indulge me of the questions. If we were to find that. If you were to find that. I'm sorry, could you say that again, please? Sure. What I'm trying to get at is it seems, at least preliminarily, on our first review of the briefs, that your claim hinges on a finding that the label violates FDA regulations. And if it does hinge on such a finding, then my next question would be, how do you get around preemption? Well, we get around preemption because the label does violate FDA regulations. Because lactose intolerance is a disease, lactate claiming to treat it is a drug. Because lactate is a drug, it cannot settle itself with a label that says we're a dietary supplement, we don't need to be approved by the FDA, et cetera. So all the things on the label that are related, that are based on the premise that lactate is a supplement, are all materially misleading because lactose intolerance is a disease which makes lactate a drug. What you seem to be saying is that the labels do violate FDA regulations. Yes, Your Honor. And if your claim can't survive without that finding. Correct, Your Honor. Then you put us in the position of ruling on what the FDA regs are, even though the FDA itself has not taken a position that lactate ads violate the regulations. You would seem to substitute the court for the FDA, or at least that's the argument being made by the other side. Well, first things, Your Honor, the courts are uniquely suited to look at the precedent that's out there and make determinations and extrapolations based on the precedent. And again, the precedent here is that the FDA has found that heartburn is a disease. So that products that treat heartburn are drugs. If you compare heartburn to lactose intolerance in light of the definition of disease in the FDA's regulations, it's impossible to conclude anything other than that lactose intolerance is a disease as well. Okay, but I think what Judge Cajal is asking, and I'm asking the same, aren't you asking us to basically sidestep the FDA regulatory process and the court be the one who determines if lactose intolerance should be considered a disease? And again, it may be, but for purposes of the FDA, that's the issue. Well, I mean, one of the things obviously that the court could do in our fallback position is that even if the court will not agree with us that as a matter of law, based on these FDA existing precedent, that lactose intolerance is a disease, then at a bare minimum, this should have been, this should have been, motion to dismiss should have been denied, and that should be an issue to be determined by expert witnesses. And I will give you a preview. Our expert witness will say the exact same thing I'm saying, except he'll be a doctor or some type of pharmaceutical person, and he'll say, look at what the definition is, look at other conditions that the FDA has defined as diseases. But if that were the case, then for every other, and I put it in quotation marks, any possible other disease, experts would be coming to court and saying, well, this is a disease, the FDA has not regulated this or termed this a disease. Courts, you do it. And again, my question again goes down to, is the First Circuit now going to become the FDA? I mean, I think that's a fair concern, but it's not an issue here, and I think it's just the reality of the way the system works. And in the preemption section of our reply, we quote cases that talk about the FDA is swamped with the amount of drugs and supplements and foods and all the other things it has to regulate. And so you just can't turn a plaintiff away by saying, oh, the FDA will get to it someday. But here's, it's not quite, that's not quite the argument. The argument, well, let me quote Buckman, that we then quoted and implored, that the statute preempts any state law claim that exists solely by virtue of an FDCA infraction. And so I'm puzzled why this isn't a claim that exists solely by virtue of an FDCA infraction, i.e., it violates the FDA regs because it's a disease that it's trying to treat. Well, it's a violation of state law because it claims the beast, because it's mislabeled under the FDCA, but it's also mislabeled in the sense that it's just false. If there was no FDCA, the label would still be false. Are there any statements on the product label that you claim are literally false? Yes. It says this is not a drug. And it is a drug. It's a drug because it treats a disease. And it doesn't matter. It could be salts or water. And if you claim to treat a disease, you're a drug. That's the FDA regulation definition. But you're not arguing that lactate does not protect against the effects of lactose intolerance? We don't know because, as this court recently discussed in Vitaminshop, it never went through the lengthy process that's required for a drug to show that it's efficacious. All we have is their marketing and possibly some anecdotal evidence. And, you know, the court may want to consider why this has never occurred. But the defendants have never gone through the trouble, even though this is a gigantic product they've been selling for decades, of getting the FDA to show the FDA that it actually works. And one of the issues besides showing the FDA that it actually works is that there are other similar conditions and diseases that you create a danger by letting lactate float around in the market because people who have more serious issues may think that they have lactose intolerance. But, again, we're in this loosey-goosey world where you can claim to treat a disease and call yourself a dietary supplement at the same time. Thank you. You've reserved three minutes, I believe, for rebuttal. Thank you, Your Honor. May it please the Court. Hannah Shen Wan here on behalf of Defendant Appley McNeil Nutritionals. I'm not going to go into the court's decision below, but I'd like to focus on three. No deception, implied preemption, as the court just went through a bit, and how when it comes to the facts that the plaintiff appellant has alleged, they do not draw any reasonable inference that gets them where they claim they want to go. So I do encourage the court to look at the high-res version of the labels that's available in the record appendix, pages 53 to 58. They're nice and clear, and you can see very clearly how odd this false advertising case is when notwithstanding what my friend here just said, not a single representation of fact on the label here is challenged as false. For example, the prevention for the prevention of gas bloating and diarrhea associated with digesting dairy, 100% true. These statements have not been reviewed by the Food Drug Administration. Also, 100% true, no dispute. These are lactase enzyme supplements, also true. And just picking up a little bit on this danger concern that my colleague just referenced, if you flip over to the next page on any of these high-res images, you can see on the back it says consult your doctor if symptoms continue after using this product, or if your symptoms are unusual and seem unrelated to eating dairy, contradicting the idea that there is any kind of misdiagnosis danger here. So when you cross out every single thing in their complaint that is not an FDCA violation, the only thing that's left is their dispute. The only thing that is left is the dispute that these true statements, of what lactase enzyme supplements do, should have been submitted to the FDA for a different regulatory process. And I draw the court's attention to the decision, Judge Kayada, you authored the decision, Dumont v. Riley, that outlined the framework here, that was a case where there was a bag of coffee, it said hazelnut cream on it, the plaintiff said, well there's no hazelnut in it. And there was an argument that there was an implied preemption argument about whether hazelnut cream met the labeling rules. This court said, well to the extent that this is all about a violation of the FDCA, that's preempted. But to the extent that there's something left, it has to predate the enactment of the FDCA. There has to be an independent basis to find that there is a deception. And here there is none. We note that the state laws that they point to as potentially providing redress for some violation of the FDCA does not predate the FDCA. And I also encourage the court to look at those regulations. They do not even implement the portions of the FDCA. When you refer to state laws, your argument is if there's no FDA violation, you can't be violating the state laws, correct? That's correct. If there's a violation of the FDCA, and again in the Dumont v. Riley case, that this framework is laid out pretty well. Well if this label said there's hazelnut cream in lactate, you have a problem. Correct, Your Honor, and there's no hazelnut in it. Here, this woman bought her lactate multiple times over the course of four years. I think that's a lot of slices of cheddar and scoops of ice cream that she was able to enjoy. There's no allegation that she herself did not experience it as effective. I also want to encourage the court to, while my brother here says that there's no evidence, there's no clarity about whether these products are effective, they themselves in the reply brief cite paragraph 31 of their complaint, an article on the verywellhealth.com website, which I encourage again the court to read on the question of efficacy, because that article says these work great to prevent diarrhea, bloating, and gas associated with digesting dairy. Are you arguing that one way you can win on appeal is that lactose intolerance is clearly not a disease? That is certainly well within this court's ability on this record, Your Honor. Do you think we could make that call based on the pleadings here? I absolutely do, Your Honor, but you do not need to if you have any qualms about it, because there are so many other paths. Well, if we could do that, then why couldn't we decide it is a disease? And then it seems to me you're undercutting your preemption position. Not at all, Your Honor, because here and here is why. If you could, if even this case would be preempted, even if it was a disease, because there's nothing independently deceptive about the label, because unlike the circumstance where the flip side, right, does treat a disease, there the label would be making a false representation of fact and would be conveying urgency and frankly would be a snake oil claim, right? That there is a whole apparatus of FDA approval and safety and efficacy in the background. But when Congress passed the Dietary Supplements Health Education Act in 1994, to permit structure function claims of which, for the prevention of gas, bloating and diarrhea associated with digesting dairy, clearly is, they told manufacturers, here's the trade. The trade is, is that if you want to put such claims that talk about the effect or the mechanism of how a product works, a nutrient works on the body, you have to dispel any concern that someone might misunderstand that by saying caveat emptor, consumers. We, FDA, are standing back at a distance from this. We haven't reviewed it. We are not letting you think that this is a disease. And you, you know, you are bringing to it your own idea, but a consumer's confusion about the label by itself is not enough to form the predicate of a 93A claim. That's the Ortiz case. You see it in some of the federal courts as well. They're all cited in our brief. I also want to note that implied preemption does even create problems around the question of injury, because if you look at page nine of the plaintiff's opening brief, they say a product ingested to combat the disease of lactose intolerance is also a drug. And that would apply to the comparable products that they have pointed to as well as the basis for their overpayment injury. Finally, they've mentioned an NIH website. Again, once again, I encourage your honors to look at the page in the record, preferably the clearer ones. This is pages 203 to 204. If lactose intolerance is a disease according to this navigational column on this website that the NIH has, then surely so is gas, diarrhea, and constipation, which are also on that list. If there are no further questions, I will rest on their briefs. Thank you. Attorney Zalvez, please reintroduce yourself for the record and proceed with your rebuttal. Thank you, Attorney Zalvez, and I'm back for Plaintiff Appellee Kristen Decroce. Just a quick couple of points. The court hit the nail on the head exactly. If the court can determine that lactose intolerance is not a disease, it can equally determine that it is a disease. And again, I think if you look at the record and if you look at what the FDA has done in the past with similar conditions and you look at the FDA's regulatory definition of a disease, it's impossible to conclude that it's not a disease. If lactose intolerance is a disease, lactate is a drug. So a label that says we did not get approved by the FDA is literally true, but materially misleading because it implies that FDA approval was not required when in fact, because it is a drug, FDA approval is required. And it's required to go through the process that this court described recently in Vitamin Shop. It's the exact same process and that's the issue. It also can't say that it also, I guess, and this is more of the state law claim piece of it, our allegations which are clearly supported by these facts are that the defendants have taken lactose, basically a lactate supplement, which standing alone and labeled correctly, can be a dietary supplement. But when you take that exact same product and you claim to treat a disease by FDA regulation, you have now created a drug. I want to just switch your focus for a second. So what injury are you alleging beyond purported noncompliance with the FDCA? The injury is that lactose overcharges, I'm sorry, lactate overcharges because it claims to treat a disease. And if you go and look at products that are made of the exact same ingredient, which is lactase, I know this is hard to follow, the ones that do not claim to treat a disease on the label are less expensive because obviously, a consumer looking at them wouldn't feel like they were getting, I'm buying an inferior product because it doesn't claim to treat lactose intolerance like lactate does, so it's cheaper. But I'm willing to pay that premium between the cheaper kind of plain vanilla product and the one that makes the illegal drug claims. So that gap in price is what the 93A damages are. It's just I was told I was getting X, I got something less than X, but I paid for X and my damages are what I paid for versus the value of what I actually received. Thank you, Mr. Savez.